UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE:                                    )
PRECISION TOOL DIE AND                    )          CASE NO. 03-38707
MACHINE CO., INC.                         )          CHAPTER 11
                    Debtor.               )
_____         )

## MEMORANDUM

This case comes before the Court on the cross motions for summary judgment filed by the

Debtor, Precision Tool Die and Machine Co., Inc. (hereinafter "Precision"), and MJ&O, LLC

Family Development Company (hereinafter "MJ&O").  Upon consideration of the motions, the

supporting documentation, and the record in this case, the Court grants the motion for summary

judgment filed by Precision.

## I.      STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and it is a core

proceeding under 28 U.S.C. § 157(b)(2)(B). Venue is proper under 28 U.S.C. §1409(a) as this

proceeding arises in and relates to the debtor's Chapter 11 case pending in this District.

## II.     SUMMARY JUDGMENT STANDARD

The Court can render summary judgment only when there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Bankr. P. 7056(c).

Summary judgment is appropriate when the record taken as a whole, and viewed in the light most

favorable to the nonmoving party, could not lead a rational trier of fact to find for the nonmoving

party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*citing First

Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

Once the moving party has made a proper motion for summary judgment, the nonmoving

party may not rely upon mere allegations to rebut the motion, but instead must set forth specific facts demonstrating that a genuine issue of material fact exists for trial. Fed. R. Civ. P. 56(e). The nonmoving party must produce more than a "mere scintilla" of evidence to support its claim, once a properly supported motion for summary judgment has been made.

## III.    FACTS

On February 27, 2001, Precision and MJ&O entered into a written and signed Letter of Intent for Lease Agreement (hereinafter "Letter of Intent") in which Precision agreed to lease certain space from MJ&O, and MJ&O agreed to lease such space to Precision. The term of the lease is the subject of the dispute currently before the Court. On September 6, 2002, Precision notified MJ&O that it did not intend to continue to lease the property beyond February 3, 2003. Specifically, Precision stated "we will not be exercising our option to extend our sublease of November 28, 2000 on this property beyond February 3, 2003." On or before February 4, 2003, Precision vacated the leased space and made no more lease payments to MJ&O after that date. After several demands, MJ&O commenced an action against Precision in Jefferson Circuit Court seeking a judgment against Precision for damages based upon Precision's alleged failure to occupy the leased space and pay rents for the entire term of the lease. This action was still pending when Precision filed for bankruptcy relief on December 18, 2003. On June 10, 2004, MJ&O filed a proof of claim for $289,248.36 (Claim No. 255).

On September 13, 2005, Precision filed an "Omnibus Objection" to various claims and in paragraph 12 of the "Omnibus Objection," stated:

> "Certain entities have filed claims against the Debtor which the Debtor disputes. These claims are either not reflected in the Debtor's Books and records, or are in amounts in excess of the amounts set forth in the Books and Records. Exhibit "A" lists the claims that the Debtor seeks to have expunged or reduced."

Claim No. 255 was included in Exhibit "A." According to the Omnibus Objection, Precision asserted nothing was owed on Claim No. 255. MJ&O responded to the Omnibus Objection asserting that its claim was accurate. The parties agreed to submit the matter to this Court on cross motions for summary judgment.

MJ&O contends that under the Letter of Intent, Precision leased the property up to December 31, 2003. Precision contends the Letter of Intent operated as a lease up to February 3, 2003, and that it merely gave an option to extend the lease to December 31, 2003. Should MJ&O be correct in its interpretation of the Letter of Intent, Precision would be liable for damages resulting from its failure to occupy the space an pay rents for the period in question. Should Precision be correct in its interpretation, it would owe no rents on the February 3, 2003 to December 31, 2003 period.

The relevant provisions of the Letter of Intent read as follows:

> Subject to execution of a Sublease by and between J. Bacon & Sons (as Sublandlord) and Lessee (as Subtenant) on or before February 22, 2001, covering certain property (the "Premises") for a period extending to February 3, 2003, Lessor (MJ&O) hereby leases said Premises to Lessee (Precision) and hereby grants to Lessee (Precision) the option to extend the lease term for the Premises at 1740 Research Drive, Jeffersontown, Kentucky 40299 upon the following terms and conditions:
>
> 1.    The lease to be upon the same terms as the present lease between Lessor [MJ&O] and J. Bacon & Sons (the "Present Lease"), excepting:
>
> a. The rent payable by Lessee [Precision] to Lessor [MJ&O] shall be $318,000.00 per year, payable monthly in advance;
>
> b. The lease term to begin February 3, 2003 and end December 31, 2003; . . .
>
> 2.    Lessor (MJ&O) grants to Lessee (Precision) one option to extend the lease term for 3 years beginning January 1, 2004 and ending December 31, 2006, upon the same terms and conditions as the lease beginning February 3, 2003 and ending December 31, 2003, providing the option is exercised

by written notice to Landlord [MJ&O] on or before August 1, 2003. . . .

3.    If Lessee (Precision) shall exercise the option to extend the lease term for the period beginning January 1, 2004 and ending December 31, 2006, then Lessee (Precision) is granted the option to extend the lease term for three years beginning January 1, 2007, on the same terms and conditions except that the rent is to be increased by nine percent (9%) and the commission to be paid by Landlord (MJ&O) is to be reduced to 3%, payable 1½% to Harry K. Moore Company and 1½% to The Raymond Walker Companies and The Schroering Company.

Within 30 days of Lessor's (MJ&O's) request at any time after the date hereof, Lessee (Precision) and Lessor (MJ&O) shall execute and deliver a new, restated lease agreement on substantially the terms of the Present Lease, as modified by this Letter of Intent. Such new lease agreement shall also contain such modifications as are reasonably necessary to delete extraneous and clearly inapplicable material and to incorporate the various amendments made to the lease over time, including the modifications set forth in this Letter of Intent.

## IV.   LEGAL DISCUSSION

There are no material facts in dispute on the issues presented to the Court. Instead, the only issue before the Court, interpretation on the an agreement between these parties, is solely a matter of law. *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. Court. App. 2001) ("The construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court."). Based upon a reading of the Letter of Intent, the Court cannot help but conclude that the term of the lease expired on February 3, 2003, and that Precision was merely granted an option to extend the lease up December 31, 2003. The Court can see no other way to read the second paragraph which expressly uses the term "option." Specifically, the Letter of Intent states "Lessor hereby leases said Premises to Lessee and hereby grants to Lessee the option to extend the lease . . . upon the following terms and conditions . . ." (emphasis added).

Using a legal definition, an option is a "right of election to exercise a privilege." *Black's Law Dictionary* 1094 (Rev. 6th ed. 1990). Under a common language definition, option is defined as "the act of choosing; choice." *American Heritage Dictionary* 923 (1976). Thus, under either a legal term of art approach or an ordinary usage definition, there is no other way to interpret the term "option" than meaning a choice for Precision to continue the lease or terminate after February 3, 2003. Indeed, the parties used the term option later in the agreement in order to give Precision the choice to continue the lease for an additional period of time. Thus, there is no reason to conclude the parties intended a different meaning for the term in the second paragraph than was used elsewhere in the agreement. As Precision did not exercise this option, it is not liable for rents for the period of time from February 4, 2003 to December 31, 2003.

MJ&O makes the argument that the Letter of Intent contains no option language with regard to the period of time from February 3, 2003 to December 31, 2003. The argument clearly ignores the clear, unambiguous language of the second paragraph. The parties specifically used the term option when referring to this period of time. If the intent of the parties were to simply extend the lease until December 31, 2003 as MJ&O contends, the word "option" would not have been included in that paragraph. The Court shall enter an Order this same date in accordance with the holding of this Memorandum.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE:                                    )
PRECISION TOOL DIE AND                    )        CASE NO. 03-38707
MACHINE CO., INC.                         )        CHAPTER 11

**ORDER**

    Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference,

    **IT IS ORDERED** the Debtor's Motion for Summary Judgment is hereby **GRANTED** and claim No. 255 of MJ&O, LLC and Family Development Company be and is hereby disallowed.

    **IT IS FURTHER ORDERED** that MJ&O's Motion for Summary Judgment is **DENIED**.